UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:07-CR-111 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| TERRY KEITH CASE ) | |

**REPORT AND RECOMMENDATION REGARDING MOTION TO SUPPRESS EVIDENCE SEIZED UPON EXECUTION OF SEARCH WARRANT (DOCS. 27, 37)**

Defendant has filed a motion to suppress (Doc. 27) and a supplemental motion to suppress (Doc. 37) all evidence seized as a result of the execution of a search warrant at his premises on April 18, 2006.

These motions were referred to the United States Magistrate Judge for a report and recommendation under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on October 21, 2008.

On April 18, 2006, Detective Brad Depew of the Hawkins County Sheriffs Office applied to Judge David Brand of the General Sessions Court for Hawkins County for a warrant to search the residence of Terry Keith Case, defendant herein. Judge Brand issued the warrant, and it was executed by Detective Depew and other officers later that day.

As a result of evidence seized during the execution of that warrant, defendant has been indicted for (1) possession of cocaine with the intent to distribute; (2) possession of marijuana with the intent to distribute; (3) possession of Hydrocodone with the intent to

distribute; (4) possession of methamphetamine; (5) possession of 15 firearms in furtherance of drug trafficking offenses; (6) possession of a machine gun in furtherance of a drug trafficking offense; (7) possession of firearms by a drug user; (8) storing dynamite in violation of applicable regulations; and (9) possession of a machine gun.

Defendant attacks Judge Brand's search warrant on several bases, each of which will be discussed separately.

*(A) THE SEARCH WARRANT DID NOT COMPLY WITH TENNESSEE LAW DUE TO ITS FAILURE TO STATE WHETHER IT WAS ISSUED AT A PARTICULAR TIME, WHETHER "A.M." OR "P.M."*

Rule 41(d) of the Tennessee Rules of Criminal Procedure requires that:

> [t]he magistrate shall prepare an original and two exact copies of each search warrant. The magistrate shall keep one copy as a part of his or her official records. The other copy shall be left with the person or persons on whom the search warrant is served.

Judge Brand himself testified at the evidentiary hearing.[1] It is Judge Brand's procedure to require an applicant for a search warrant to submit to him four *originals* of the application, affidavit, and warrant. The applicant and affiant fills in all relevant blanks (such as the date) on each of these originals. Similarly, the applicant signs each of the originals. By the same token, Judge Brand dates and signs each of the originals. At the end of this process, there will be four identical search warrants and accompanying documents, all signed as originals. As required by Tenn.R.Crim.P. 41, Judge Brand retains one of these originals for his own records. Another original is designated for the Clerk of Court. Of the two

---

[1]He was subpoenaed by the defendant.

remaining originals, one is for the applicant, and the other is for the person whose property is to be searched.

Rather than executing one original and then making three or four photocopies of that original, Judge Brand simply requires the applicant to present him with four originals, all of which are signed as such. Judge Brand's procedure is in conformance with Tenn.R.Crim.P. 41(d). However, one of the "versions" of the subject search warrant did not precisely mirror the other three, which led to this attack on the warrant.

Rule 41(b)(2)(D) of the Tennessee Rules of Criminal Procedure requires that the issuing judge indicate on the face of the warrant the hour it was delivered to the officer for execution.[2] Judge Brand duly noted on three of the originals the precise time he issued the warrant: 11:15 A.M., April 18, 2006. However, on one of those originals did he inadvertently fail to write "A" to indicate that it was issued at 11:15 A.M. Oddly, it was on the copy retained by Judge Brand that he failed to note "A;" on the other three originals, the letter "A" is clearly written after 11:15.

A violation of a state procedural rule regarding the issuance of a search warrant does not require suppression of evidence seized pursuant to that warrant that is used in a federal prosecution, unless the state procedural violation amounts to a violation of the Fourth Amendment to the United States Constitution. *See, United States v. Shields*, 978 F.2d 943 (6th Cir. 1992). There is no federal constitutional requirement that the time of issuance be

---

[2]Rule 41 of the Federal Rules of Criminal Procedure contains no requirement that the exact time of issuance of a warrant be stated except for a warrant that is requested by telephone. *See*, Fed.R.Crim.P. 41(e)(3)(D).

3

noted on the warrant. In any event, this is actually a non-issue; the version of the warrant that was left with the defendant indicated on its face that the warrant was issued at 11:15 A.M. on April 18, 2006. Similarly, the version delivered to the clerk's office for filing[3] showed that it was issued at 11:15 A.M. The omission of "A" on Judge Brand's personal copy is utterly of no significance.

### *(B) THE AFFIDAVIT FAILS TO STATE PROBABLE CAUSE*

There is no need to reproduce herein Detective Depew's affidavit filed in support of his application for a search warrant; Exhibits 1, 2, and 3 all are copies of the search warrant, application, and affidavit. It is sufficient to say that if the affidavit had been submitted to this magistrate judge to support an application for a federal search warrant, this magistrate judge would have issued the warrant. The affidavit states probable cause to believe that marijuana and morphine probably would be found in defendant's residence. The presence of marijuana and morphine would reasonably suggest that there likely would be "other drugs" on the premises, as well as drug paraphernalia. Contrary to defendant's argument, the affidavit was not "boilerplate," and it was sufficiently detailed to establish probable cause.

### *(C) THE SEARCH WARRANT WAS UNCONSTITUTIONALLY OVER-BROAD*

This is another non-issue. Defendant argues that the warrant authorized the officers to search for "marijuana, morphine, other drugs, paraphernalia, *stolen property,*

---

[3]Ex.2.

*drugs, etc*." It is the italicized words which defendant seizes upon to support his argument that this warrant was unconstitutionally broad. However, those words - Stolen Property, Drugs, Etc. - are preprinted words that appear below the blank line on the search warrant form. Those words clearly are intended to be examples to the issuing judge regarding what should be written or typed on the line. Those words just as easily could have been, and probably should have been, "Here describe property to be seized."

*(D) THE DESCRIPTION OF THE PROPERTY LACKED SUFFICIENT PARTICULARITY*

Notwithstanding that this claim was not raised in either the motion to suppress, or the supplemental motion to suppress, defendant's attorney repeatedly referred to the lack of a street address in the warrant and affidavit during various times during his examination of Detective Brad Depew. Although the failure to raise the issue in his motions in reality forecloses the issue, it will be addressed solely out of an abundance of caution.

The Fourth Amendment to the United States Constitution requires that search warrants must particularly describe the things to be seized, as well as the place to be searched. *Dalia v. United States*, 441 U.S. 238, 255 (1979). Defendant suggested that the warrant did not describe with particularity the place to be searched inasmuch as it failed to provide a street address. A warrant meets the particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended [to be searched.]" *Steele v. United States*, 267 U.S. 498, 503 (1925). Indeed, even if an *erroneous* street address is included in the warrant, the warrant

5

must be upheld if the description of the place to be searched was sufficiently detailed that the executing officers could not mistakenly search the wrong place. *See, United States v. Pelayo-Landero*, 285 F.3d 491, 495 (6th Cir. 2001).

> The warrant in this case described the property to be searched as follows:
>
> Starting at the intersection of Park Blvd. and Hwy. 11W in Rogersville travel east approximately 8.4 miles to the intersection of north Zions Hill Rd. turn left and travel approx. 5/10 of a mile to a gravel driveway. Turn right and travel approx. two hundred yards to a residence at the end of the driveway that has reddish colored brick, black shingle roof, white trim on the eaves, covered wooden front porch and a screened in covered back porch. There are two barns behind the residence with two gray storage buildings on the north side of the driveway at the gates.
> Located in Hawkins County Tennessee.

Notwithstanding the lack of a street address, this description was sufficiently detailed to enable anyone to find this house. It bears noting that defendant introduced no evidence that there was any other house in the immediate area that was so similar to defendant's residence that it could have been mistakenly searched. Moreover, Detective Depew had kept defendant's residence under surveillance on prior occasions, and therefore knew which house was to be searched; even if the description was inadequate, his knowledge of the specific place to be searched could be used to supplement the description in the warrant. *United States v. Gahagan*, 865 F.2d 1490, 1499 (6th Cir.), *cert*. denied, 492 U.S. 918 (1989).

*(E) DETECTIVE DEPEW MADE A MISSTATEMENT OF FACT IN HIS AFFIDAVIT FILED IN SUPPORT OF HIS APPLICATION FOR A SEARCH WARRANT.*

Detective Depew testified at defendant's preliminary hearing in the General Sessions Court for Hawkins County, Tennessee, on October 23, 2006. In the course of Detective Depew's re-cross examination by defendant's attorney during that preliminary hearing, he was asked this question: "Had you not been to Mr. Case's residence before?" (By "before," defendant's counsel was referring to any time before April 18, 2006, the date the search warrant was executed). Detective Depew's answer was, "No." Defendant focuses upon the following sentence in Detective Depew's affidavit: "Your affiant Det. Brad Depew while conducting surveillance on the residence of Terry Case (alias) in the recent past has observed numerous vehicles going to the residence and staying only a few minutes." Defendant says that was an intentional misstatement that violates the finding of probable cause.

If an applicant for a search warrant knowingly and intentionally makes a false statement in his affidavit, or makes it with reckless disregard for the truth, and if the offending information is essential to the probable cause determination, it follows that the search warrant issued on the basis of that affidavit lacks probable cause and any evidence seized as a result must be suppressed. But, if the false statement can be excised from the affidavit and probable cause remains, the warrant is valid. *Franks v. Delaware*, 438 U.S. 154 (1978).

When Detective Depew's answer of "No" is read in the context of his entire testimony at the preliminary hearing, it is apparent that he was indicating that he had never been *in* defendant's residence; he testified several times during the course of that preliminary

7

hearing that he knew exactly where defendant's residence was located.

First, there was no misrepresentation or misstatement. Second, if it be assumed solely for the sake of argument that there was a misrepresentation, it was not material to the probable cause determination. Even if the affidavit omitted Detective Depew's representation that he had watched numerous vehicles "going to the residence and staying only a few minutes," such would subtract only an inconsequential amount from the probable cause determination, if any at all.

### *(F) THE ACTUAL SEARCH EXCEEDED THE SCOPE OF THE WARRANT*

The affidavit filed in support of the application for the warrant recited that Detective Depew believed that inside the residence would be found "marijuana, morphine tablets, other illegal drugs, drug paraphernalia, records of account balances, checks, telephone/cell phone billing records, lists of names and/or telephone numbers." Additionally, he recited in his affidavit that he expected to find in the residence "records, books, receipts, ledgers or documents relating to the activities on the identifications of co-conspirators, drug suppliers, or buyers [and] all rent receipts and/or utility bills or any document establishing control or dominion over this or any place, address books, ledgers, computers, documents or receipts for assets and currency."

Notwithstanding Detective Depew's affidavit that he expected to find all of the above in defendant's residence, the search warrant itself only authorized him to search for

8

"marijuana, morphine, other drugs, paraphernalia."[4]

During the search of the house, Detective Depew and the other officers found significant quantities of illegal drugs and controlled substances. Additionally, as they searched for drugs, they also found, and seized, fifteen firearms scattered throughout the house. One particular firearm requires specific discussion. In defendant's attic, the officers discovered a stash of cocaine, marijuana, and Hydrocodone. Within twelve to eighteen inches of these drugs, the officers observed something wrapped in cloth. Defendant argues that the officers could not tell what this item was until it was unwrapped, but Detective Depew unequivocally testified that it was apparent what the object was: a firearm. The court agrees: *see*, Exhibit 5. That firearm turned out to be a fully automatic weapon, i.e., a machine gun. Even if it be assumed for the moment that the contents of the "wrapped package" could not be identified as a gun, it follows that the contents could not be identified as anything in particular. Thus, the wrapping could have concealed a long container that held drugs; after all, drugs were located within 28 inches of this package. The officers lawfully unwrapped the package to search for drugs; once unwrapped, the machine gun was discovered.

In addition to the guns, Detective Depew also seized a great deal of personal property that was not described in the warrant. This "other property"[5] was: a jet boat; a

---

[4] Since the affidavit established probable cause to believe that records, and ledgers and documents in the house would contain evidence of drug trafficking, the failure to list those items in the warrant itself was a careless omission.

[5] So named in the suppression hearings.

horse trailer; a bobcat excavator; a Chevrolet pickup truck; another Chevrolet pickup truck; a Ford dump truck; a backhoe; a trailer; a motorcycle; a pressure washer with trailer; another pressure washer, a weed eater; a chainsaw, a Skil saw; a tool box and tools; an air compressor; another chain saw; a Stihl saw; a cutoff saw; a pole saw; a generator; an electric welder; Craftsman power tools; a Saw Zaw; a shock box; a chop saw; surveillance equipment; video cable; a flat screen tv; a Dell laptop computer; a video system; a laser level; a CD player, a 30 channel scanner; two hand held radios; a Buck knife; a television; a utility trailer; 4 life jackets; binoculars; an electric wench; bolt cutters; a cordless drill; a socket and wrench set; another chain saw; another weed eater; and a pressure sprayer hose reel.[6]

Defendant argues that the warrant did not authorize Detective Depew to search for and seize guns, and it certainly did not authorize him to seize the "other property." It is defendant's position that he exceeded the scope of the warrant and effectively converted this search warrant into a general warrant, which of course is prohibited by the particularity requirement of the Fourth Amendment.

After the first suppression hearing, the conclusion *seemed* to be inescapable that Detective Depew had grossly exceeded the scope of the warrant; he had filed a

---

[6]The laptop, 1989 Chevrolet truck and the backhoe were seized from, or at, defendant's barbershop, not from defendant's residential property. They were seized after a consensual search of the barbershop on the following day, April 19.

10

handwritten inventory of seized property as part of his return on the search warrant,[7] and that inventory listed (1) the drugs and drug paraphernalia, (2) the firearms, and (3) the "other property." If one looked no further than this inventory of seized property, Detective Depew far exceeded the scope of the warrant and, at least arguably, *all* the evidence should be suppressed under the authority of *United States v. Medlin*, 842 F.2d 1194 (10th Cir. 1988).[8] However, in the course of his testimony, Detective Depew testified that he seized the "other property" because he believed that it had been either procured in exchange for drugs or with the proceeds from the sale of drugs. Additionally, Detective Depew undertook to testify that defendant admitted that this property was procured with drug money or taken in exchange for the sale of drugs. In the calmer atmosphere of the magistrate judge's chambers, while considering the evidence just heard, two questions arose that begged for answers: *when* did defendant allegedly tell Detective Depew that the other property was obtained in exchange for drugs or with drug proceeds? And was this a "paper seizure" only, i.e., did Detective Depew physically remove the other property on April 18, 2006, or did he remove it at some later date? Primarily to obtain an answer to the latter question, the magistrate judge directed the parties to reappear for a supplemental hearing, and Detective Depew was instructed to again take the witness stand.

    The magistrate judge promptly got answers to both questions. First, it was not until April 19, 2006, the day after the search of this residence, that defendant admitted that

---

[7]Ex. 2.

[8]*See also, United States v. Wolfe*, 2000 WL 1562833 (6th Cir. 2000) [unreported].

11

the "other property" indeed was purchased with drug money or taken in exchange for the sale of drugs. Second, Detective Depew physically seized the "other property" on April 18, 2006.

At this point, Detective Depew's supplemental testimony tended to confirm the initial reaction of the magistrate judge, *viz.*, that Detective Depew exceeded the scope of the warrant in seizing the other property. However, the magistrate judge allowed the attorneys to further question Detective Depew, and it was during this subsequent examination that the circumstances surrounding the seizure of the other property (and guns) became clear.

On April 19, 2006, the day following the search and seizure, Detective Depew filled out a "Notice of Property Seizure and Forfeiture of Conveyances" and delivered a copy of it to the defendant. *See*, Exhibit 10. That notice advised defendant that Detective Depew had seized a 2000 Mercedes SLK, as well as other vehicles and property described on a separate attached list. That attached list was typewritten, a copy of which was filed as Exhibit 6. The typewritten list was prepared from the inventory list that Depew prepared on April 18 following the search of defendant's residence and which was filed as part of the return on the search warrant. On the typewritten list was every firearm and each item of the "other property;" the drugs were not listed. He testified that he seized the "other property" for civil forfeiture, not as evidence to be used against defendant.[9]

The seminal issue, of course, is whether Detective Depew had statutory authority to seize the other property (and, for that matter, the guns) on April 18 as part of his

---

[9]*See*, transcript of supplemental hearing, p. 80.

12

search of the residence.  He clearly did. Tenn. Code Ann. § 53-11-451, in pertinent part, reads as follows:

> **53-11-451.  Goods subject to forfeiture - Seizure - Disposition. -**
>
> (a) The following are subject to forfeiture:
>
> * * *
>
> > (6)(A) Everything of value furnished or intended to be furnished, in exchange for a controlled substance in violation of the Tennessee Drug Control Act of 1989, compiled in part 3 of this chapter, this part and title 39, chapter 17, part 4, all proceeds traceable to the exchange, and all monies negotiable instruments, and securities used, or intended to be used, to facilitate any violation of the Tennessee Drug Control Act; . . . .
>
> * * *
>
> (b) Property subject to forfeiture under part 3 of this chapter and this part, or tile 39, chapter 17, part 4, may be seized by the director of the Tennessee bureau of investigation or the director's authorized representative, agent or employee, the commissioner of safety or the commissioner's authorized representative, agent or employee, or a sheriff, deputy sheriff, municipal law enforcement officer, campus police officer as defined in § 49-7-118, or constable upon process issued by any circuit or criminal court having jurisdiction over the property. *Seizure without process may be made if*:
>
> > (1) The seizure is incident to an arrest or a search under a search warrant . . . [and]:
>
> * * *
>
> > (4) the . . . deputy sheriff . . . has probable cause to believe that the property was used or is intended to be used in violation of part 3 of this chapter and this part, or title 39, chapter 17, part 4. (italics supplied).

Tenn. Code Ann. § 40-33-201 provides that "[a]ll personal property, including conveyances, subject to forfeiture under the provisions of . . . § 53-11-451 . . ., shall be seized

13

and forfeited in accordance with the procedures set out in this part."

Tenn. Code Ann. § 40-33-203 describes the procedure to be followed by an officer making a seizure authorized under § 53-11-451:

**40-33-203. Seizure**.

(a) Upon effecting a seizure, the seizing officer shall prepare a receipt titled a "Notice of Seizure." The notice of seizure shall be a standard form promulgated by the applicable agency. The applicable agency may adopt an existing notice of seizure form.

\* \* \*

(c) Upon the seizure of any personal property subject to forfeiture pursuant to § 40-33-201, the seizing officer shall provide the person found in possession of the property, if known, a receipt titled a "Notice of Seizure." The notice of seizure shall contain the following:

> (1) a general description of the property seized and, if the property is money, the amount seized;
> (2) the date the property was seized and the date the notice of seizure was given to the person in possession of the seized property;
> (3) the vehicle identification number (VIN) if the property seized is a motor vehicle;
> (4) the reason the seizing officer believes the property is subject to seizure and forfeiture;
> (5) the procedure by which recovery of the property may be sought, including any time periods during which a claim for recovery must be submitted; and
> (6) the consequences that will attach if no claim for recovery is filed within the applicable time period.

At this point, an additional question arises: was the "other property" and the guns seized pursuant to the search warrant, or seized pursuant to the state statutory forfeiture scheme? The answer is, very clearly, the latter. During both hearings, Detective Depew had in his file the Notice of Property Seizure and Forfeiture of Conveyances that he executed on

14

April 19, 2006 (Exhibit 6), and the Forfeiture Warrant ultimately signed by Judge Brand on April 24, 2006 (Exhibits 6 and 9). In defense of Detective Depew, at the first suppression hearing he attempted to explain why he seized the guns and other property and under what authority he did so, but he was repeatedly frustrated in his efforts to do so because the Assistant United States Attorney failed to appreciate the ultimate significance of the Tennessee forfeiture law and the part it played in Detective Depew's seizure of the property, and the magistrate judge was completely unaware of its existence.

Another question that arises is whether the fact that Detective Depew initially listed the "other property" as part of his return on the search warrant works some kind of "estoppel" and precludes him from demonstrating that the property actually was seized pursuant to the forfeiture statutes, rather than under the search warrant? That question is answered in the negative. Form has not yet been elevated that much over substance; Detective Depew was required to leave a listing of property seized by him which he claimed to be subject to forfeiture, and he did so as part of his entire inventory list. It bears noting that he carefully segregated his inventory into separate categories: drugs and drug paraphernalia, guns, and the "other property." The following day he prepared the typewritten list (Exhibit 6) which contained only the guns and the other property. Respectfully, Detective Depew likely made a mistake in listing the guns and other property on the search warrant inventory; at the very least, by doing so he created the issue that is now before this court. But, procedural mistake or not, Detective Depew seized this property, *not pursuant to the search warrant*, but pursuant to the forfeiture statutes. He merely seized the property

15

during or immediately after the execution of the search warrant, which is perfectly permissible under Tenn. Code Ann. § 53-11-451(b)(1).

On April 24, 2006, Judge Brand signed the forfeiture warrant, which was within five business days of the seizure as required by Tenn. Code Ann. § 40-33-204(b).

Defendant ultimately disdained the procedure provided by Tenn. Code Ann. § 40-33-206 by which he could have sought to reclaim the property. As a result, the guns and "other property" long ago were forfeited to the state of Tennessee.

At this point, the last question arises: did Detective Depew have probable cause to believe that the guns and other property were related to defendant's drug trafficking, which Tenn. Code Ann. § 53-11-451(b)(4) requires? The answer is: it does not matter. Even if Detective Depew did not have probable cause to believe that the guns and "other property" were related to defendant's drug trafficking, it must be remembered that those guns and other property were seized pursuant to the civil forfeiture statutes, not the search warrant. It is a fine distinction, but an important one. Thus, even if the property was improperly seized under the civil forfeiture statutes, defendant's remedy is in some other forum and under some other law; certainly, his remedy is not to suppress the fruits of a legitimate search. It bears repeating that defendant declined to avail himself of the administrative remedy the forfeiture statutes gave him.

Moreover, based upon the totality of the circumstances, this court believes that Detective Depew did have probable cause to believe that the guns and other property were related to defendant's drug trafficking. As far as the "other property" is concerned, Detective

Depew had information from confidential informants and the public that defendant was dealing in illegal drugs and that he would accept personal property as payment. Detective Depew observed similar items of personal property in separate piles, i.e., a pile of saws in one place, a pile of something else in another place. This information, coupled with defendant's occupation as a barber in a small town, would reasonably indicate that he could not afford the extensive amount of personal property observed and seized by Detective Depew.  The question is not whether defendant actually obtained this property with drug money, but whether there was probable cause to believe that he did.  And as far as the guns are concerned, it is the law of this Circuit that guns are well-recognized tools of the narcotics trade; "Dealers in narcotics are well known to be dangerous criminals usually carrying firearms." *United States v. Moreno*, 658 F.2d 1120 (6th Cir. 1981) (quoting *United States v. Korman*, 614 F.2d 541, 546 (6th Cir.) *cert*. denied, 446 U.S. 952 (1980).  Since the firearms were discovered during a search for drugs and drug paraphernalia, the "plain view exception" to the specificity requirement for a warrant is applicable. *See, United States v. Caggiono*, 899 F.2d 99 (1st Cir. 1990).  In other words, bearing in mind the relationship between guns and drugs, these guns were obviously contraband.  If an officer is lawfully present and the incriminating character of an item is "immediately apparent," and if in "plain view," the officer may seize that item.  Again, recalling the relationship between guns and illegal drug trafficking, the nexus of the firearms to defendant's criminal activity was immediately apparent.   If the firearms could have been seized under the warrant as contraband in plain view, it follows that they could have been seized under Tennessee's civil

forfeiture scheme as fruits of drug trafficking.

Detective Depew did everything he was required to do under Tennessee's civil forfeiture statutes. Since the constitutionality of those statutes is not an issue, it follows that the seizure of the "other property" (and the guns) also was constitutional. But, solely for the sake of argument, if it is assumed that he failed to comply with some part of the civil forfeiture law, or that he did not have probable cause to believe that the other property and guns were obtained with drug money, nevertheless his seizure of the "other property" and drugs must still be upheld since he did not seize that property under the search warrant; he seized it under the civil forfeiture statute. To be sure, he observed that other property because of the search warrant, but he physically seized it on the basis of the forfeiture laws.

Unless the point be lost, a "general warrant" is one that allows an officer to generally rummage through a person's property to see if evidence of the crime under investigation, or any crime for that matter, can be found. *Harris v. United States*, 331 U.S. 145 (1947). Detective Depew's motivation in seizing the "other property" was not to look for further evidence of a crime, but to ultimately sell the property he believed the defendant obtained from the sale of illegal drugs.

Under the authority of the search warrant, Detective Depew seized only what he was authorized to seize: marijuana, morphine, other drugs, paraphernalia. He seized the guns and the other property pursuant to Tenn. Code Ann. § 53-11-451. Detective Depew did not exceed the scope of the warrant and there is no basis to suppress the evidence seized pursuant to that warrant on that basis.

18

Case 2:07-cr-00111-JRG-MCLC   Document 66   Filed 11/03/08   Page 18 of 19   PageID #: 578

## *CONCLUSION*

There is no basis to suppress the evidence seized on April 18, 2006, on the basis of any of the theories argued by defendant. It therefore is recommended that defendant's motion to suppress (Doc. 27), and his supplemental motion to suppress (Doc. 37), be denied.[10]

Respectfully submitted,

                                                 s/ Dennis H. Inman
                                            United States Magistrate Judge

---

[10] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).