UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA    )
    )
v.    )      NO. 2:07-CR-111
    )
TERRY KEITH CASE    )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of the defendant for Judgment of

Acquittal Or, In The Alternative, For A New Trial." [Doc. 100]. The defendant has

not filed a brief in support of his motion and the government has not responded to the

motion. For the reasons which follow, the motion will be denied.

## I.    Procedural History

The defendant was indicted by a federal grand jury in a nine count indictment

on December 11, 2007. [Doc. 1]. The defendant was charged with possession with

the intent to distribute cocaine (Count 1), possession with the intent to distribute

marijuana (Count 2), possession with the intent to distribute hydrocodone (Count 3),

possession of methamphetamine (Count 4), possession of firearms in furtherance of

a drug trafficking offense (Count 5), possession of a machinegun in furtherance of a

drug trafficking offense (Count 6), possession of firearms by a unlawful user of a

controlled substance (Count 7), unlawful storage of an explosive material (Count 8), and possession of a machinegun (Count 9).

Defendant's case proceeded to trial before a jury from May 19, 2009 through May 22, 2009. The defendant was found guilty as charged of Counts 1 through 7 and Count 9 and not guilty of Count 8. Sentencing is scheduled for October 5, 2009.

## II.     Applicable Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure permits a district court, upon a defendant's motion, to 'vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. Wheaton*, 517 F.3d 350, 360-61 (6th Cir. 2008) (quoting Fed. R. Crim. P. 33). "A motion for new trial under Rule 33 may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).

Rule 29 of the Federal Rules of Criminal Procedure requires the court, on defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. "The relevant inquiry when reviewing claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (emphasis in original) (quoting

*Jackson v. Virginia*, 433 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)).

Circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *United States v. Phibbs*, 999 F.2d 1053, 1064 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994). Substantial evidence means "more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (quoting *United States v. Martin*, 575 F.2d 956, 957 (6th Cir. 1967)).

"Because the issue is one of legal sufficiency, the court neither 'independently weighs the evidence, nor judges the credibility of witnesses who testified at trial.'" *Hughes*, 505 F.3d at 578 (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). When considering the sufficiency of the evidence, the court may not substitute its judgment for that of the jury. *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). Instead, the court "must view all evidence and resolve all reasonable inferences in favor of the government." *Hughes*, 505 F.3d at 592. In addition, "it must be remembered that 'circumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need *not* remove every reasonable hypothesis except that of guilty.'" *Id.* (emphasis in original) (quoting *United States v. Stone*, 748

3

F.2d 361, 362 (6th Cir. 1984)).

## III.    Facts

On April 18, 2006, law enforcement officers executed a search warrant at the residence of the defendant, Terry Keith Case.  The defendant accompanied officers to the residence, and unlocked the door for them.  Prior to the search, the defendant told officers they would find some "smoking dope" on the kitchen table and he later told the officers that they would also find a pound of marijuana in the garage.  The defendant also told officers that he lived at the residence by himself.

In the defendant's bedroom, described as the left, rear room of the house, the officers found marijuana, cocaine, cash, ammunition and numerous firearms, one of which was a loaded pistol on a dresser near the bed.  Located in the bedroom was a closet with foldout doors.  Inside the closet was a wall mounted "ladder" which led to an attic which ran the length of the house.  The ladder showed evidence of extensive use.

A significant amount of cocaine, marijuana and hydrocodone  was found in the attic.  Portions of the drugs were found in a box situated near the attic entrance, and all were found within feet of the entrance.  Within feet of the attic entrance, beside the box, was a double trigger, fully functional, 9mm machinegun wrapped in a cloth like material and tied at the top and bottom.  Wrapped inside the wrapping with the

machinegun was a loaded magazine for the weapon. The loose wrapping covering the machinegun was removed by the officers in seconds.

In all, twelve firearms, some loaded and some unloaded, were located in defendant's bedroom or the attic, which was accessible only from the defendant's bedroom. Three other firearms–an unloaded shotgun in a hard case in the livingroom, an unloaded .22 caliber semi-automatic rifle in the right rear bedroom, and an unloaded 10-gauge shotgun leaned against the house on the porch–were recovered from the residence. A loaded, Ruger P89 9mm revolver was found between the seats of defendant's car parked in the adjacent garage. The house contained no gun safe or gun cabinet. In addition to the drugs found in the residence, the officers found additional quantities of marijuana and cocaine in the garage, as well as digital scales, ziplock Baggies and ties. Throughout the residence, officers recovered thousands of rounds of various caliber ammunition, including a large quantity of 9mm ammunition. The defendant told officers, in a written and signed statement, that he sold cocaine and marijuana and that he purchased the machinegun from his drug supplier for $500.00.

Also located at the residence was a rather extensive surveillance system. Inside the livingroom was a camera mounted on a tripod and cameras were mounted above the front door, under the eaves of the house and on the roof of the house. The house was surrounded by five or six outdoor cameras all aimed at different angles. A

5

monitor for the surveillance system was located on a dresser in the defendant's bedroom with the screen facing the bed. On the date the search warrant was executed, the power was on for the surveillance system but the monitor had not been turned on in the bedroom.

## IV.     Analysis and Discussion

The defendant moves for judgment of acquittal of all counts of the indictment of which he was convicted or, in the alternative, for a new trial. More specifically, he raises six grounds for his motion: (1) the Court erred in denying defendant's pretrial motion to suppress; (2) the evidence was insufficient to sustain the conviction of defendant of Count 6; (3) the Court erroneously permitted the "expert" testimony of Scott Castle; (4) the government improperly referred in closing argument to defendant's failure to testify; (5) the government improperly referred in closing argument to evidence the court had excluded; and (6) the Court erred when it did not instruct the jury that it must unanimously agree upon which firearm the defendant illegally possessed before he could be convicted of Counts 5 and 7. The Court will address each of these arguments in turn.

### A.     The Motion to Suppress

The defendant filed a pretrial motion to suppress, [Doc. 27], and a supplemental motion to suppress, [Doc. 37], all evidence seized as the result of the execution of the

search warrant April 18, 2006. The motion was referred to United States Magistrate Judge Dennis H. Inman for a Report and Recommendation. The Magistrate Judge conducted an evidentiary hearing and issued a thorough Report and Recommendation [Doc. 66]. The defendant then objected to the Report and Recommendation and this Court, after a *de novo* review, overruled the defendant's objections, adopted and approved the Report and Recommendation, and denied the motion to suppress. The defendant has not called any additional matter to the attention of the Court to suggest that the Court's earlier ruling was erroneous and this part of the motion will be denied for all the reasons previously stated. [Docs. 66, 69]. **B. Sufficiency of the Evidence**

Although the defendant states in his motion that he seeks a judgment of acquittal as to all counts of conviction, he only specifically addresses the conviction of Count 6 for possession of a machinegun in furtherance of a drug trafficking offense. With respect to the other counts, he simply notes that without the evidence seized in the April 18, 2006 search, the evidence would have been insufficient to sustain his conviction of any of the charges. Because the defendant has only perfunctorily mentioned the counts of conviction other than Count 6, the Court will discuss his argument only as it relates to Count 6.

Count 6 of the indictment charged the defendant with possessing a machinegun

in furtherance of a drug trafficking offense as charged in Counts 1, 2 and 3 in violation of 18 U.S.C. § 924(c)(1)(A)&(B)(ii). The jury found the defendant guilty of possessing the machinegun in furtherance of all three drug trafficking offenses. 18 U.S.C. § 924(c)(1)(B)(2) provides that any person "who, in furtherance of [a drug trafficking crime for which the person may be prosecuted in a court of the United States], possesses a [machinegun] . . . shall be sentenced to a term of imprisonment of not less than 30 years."

A firearm is possessed in furtherance of a drug trafficking offense if it promotes or facilitates the crime. *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). This means that there must be a "specific nexus between the gun and the crime charged." *Id.* at 462. Possession of the weapon may be actual or constructive, and it may be either exclusive or joint. *United States v. Paige*, 470 F.3d 603, 610 (6th Cir. 2006). "Both actual possession and constructive possession may be proved by direct or circumstantial evidence." *United States v. Graves*, 478 F.2d 1329, 1333 (6th Cir.), *cert denied*, 414 U.S. 866 (1973). "Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *United States v. Coffee*, 434 F.3d 887, 896 (6th Cir. 2006) (citation omitted); *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998).

"In order for the possession to be in furtherance of a drug crime, the firearm

must be strategically located so that it is quickly and easily available for use."
*Mackey*, 265 F.3d at 462. In *Mackey*, the Sixth Circuit recognized as helpful in
determining whether or not the firearm was possessed in furtherance of a drug
trafficking offense the five factors identified by the Fifth Circuit in *United States v.*
*Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000). The non-exclusive list of
factors include: (1) whether the firearm was loaded; (2) the type of firearm; (3)
whether the weapon was stolen or legitimately possessed; (4) the type of drug activity
conducted; and (5) the time and circumstances under which the gun was found. *Id.*
As noted, the list of factors is not exclusive, but it does help "to distinguish
possession in furtherance of a [drug trafficking] crime from innocent possession of a
wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id.*

Although mere possession of a firearm in the same premises where drug
trafficking takes place will not, by itself, sustain a conviction under § 924(c), "a jury
can reasonably infer that firearms which are strategically located so as to 'provide
defense or deterrence in furtherance of the drug trafficking' are used in furtherance
of a drug trafficking crime." *United States v. Swafford*, 385 F.3d 1026, 1028-29 (6th
Cir. 2004) (quoting *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004)).

There can be little doubt in the present case that the defendant possessed the
machinegun which is the subject of Count 6 of the indictment. The machinegun was

found in the attic of defendant's house above a closet located adjacent to the defendant's bedroom. Not only is defendant's dominion over the premises where the machinegun was located sufficient to establish constructive possession, the defendant admitted to actual possession of the firearm in his statement made to the police.

The more hotly contested issue at trial, however, was whether the possession was in furtherance of the drug trafficking crimes charged in Counts 1, 2 and 3. Applying the *Mackey* factors to the facts of this case establishes rather clearly that the machinegun was in fact strategically located for quick and easy use. The machinegun was located in the attic above the defendant's bedroom where it could be easily and quickly reached. The machinegun was located in close proximity to distribution quantities of drugs and, although it was apparently wrapped in a sheet of some sort and tied at the top and bottom, the testimony established that the weapon could have been untied and unwrapped in a matter of seconds. The weapon, although unloaded, was wrapped along with a fully loaded magazine and was easily made ready for firing by simply inserting the magazine into the weapon.

The type of firearm also strongly suggests its possession in furtherance of drug trafficking crimes. The weapon has no purpose for hunting, did not appear to be an antique weapon, nor did it appear to be part of any kind of gun collection. While there is no proof that the weapon was stolen, it could not be lawfully possessed. See 18

U.S.C. §§ 922(o)(1) and 924(a)(2). The machinegun was also located on the same premises as a smorgasbord of illegal drugs and paraphernalia associated with drug trafficking and thousands of rounds of ammunition, much of which was 9mm ammunition for use in the machinegun. It was also clear that the defendant had been dealing quantities of illegal narcotics from his residence as evidenced by frequent traffic in and out of the residence observed by police officers in the days leading up to the execution of the search warrant.

The association of the firearm with drug trafficking is also shown by the defendant's own statement that he acquired the machinegun from his drug supplier. Additionally, the presence of 16 weapons in and around the residence suggests that none of the firearms were for an innocent purpose. None of the weapons were prominently displayed nor secured and stored under lock and key. Given that sums of cash and large quantities of drugs were stored at the residence and that persons frequently came to the residence to purchase drugs, the evidence establishes at the very least, that the machinegun was kept and was available for protection both of the defendant and his drugs and cash and for the purpose of intimidation.

The defendant's argument is premised primarily on the fact that this machinegun was wrapped and tied and located in the attic. Under the circumstances of this case, however, it cannot reasonably be concluded that the machinegun was not

strategically located and readily accessible in the furtherance of these drug trafficking offenses, rather than being possessed for an innocent purpose. While the location of the firearm in the attic is admittedly a relevant circumstance, it certainly is not determinative of the issue raised by the defendant. The machinegun could have been reached and ready to fire in a matter of seconds or minutes, at most, by anyone occupying the residence. In fact, numerous courts have upheld § 924(c) convictions when the firearm in question was not easily or immediately accessible, *i.e.*, within the reach of a drug trafficker. *See United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004) (affirming conviction when the police found the defendant with a gun in a bedroom located 10 to 15 feet from the garage where he stored drugs); *United States v. Garner*, 338 F.3d 78, 80-81 (1st Cir. 2003) (affirming conviction when firearms and drugs were found in a hole in a wall of a building's common basement and the defendant was selling drugs out of an apartment in the building), *cert. denied*, 540 U.S. 1084 (2003); *United States v. Luciano*, 329 F.3d 1, 3-6 (1st Cir. 2003) (affirming conviction when a firearm and drugs were found in a ceiling crawl space, requiring the agent to stand on a chair and climb into the crawl space ); *United States v. Morgan*, 33 Fed. Appx. 603 (3d Cir. 2002) (affirming conviction when firearms and drugs were found together in a dropped ceiling while the defendant was away from his apartment); *Bressi v. United States*, 2001 WL 395289 (E.D. Penn. 2001) (denying

a habeas petition when a firearm and drugs were found in a locked safe). The evidence is clearly sufficient to sustain the defendant's conviction of Count 6 and his argument lacks merit.

### C. The "Expert" Testimony of Scott Castle

The government called Scott Castle ("Castle"), Director of the Third Judicial District Drug Task Force, as a witness in this case. Although Castle was present when defendant made his statement to the police after his arrest, he was not otherwise involved in the investigation of the case. Castle testified that the drugs located at defendant's premises, except for the methamphetamine, were not user quantities of drugs and testified generally as to the street values of the drugs found. Castle testified that the cocaine possessed by the defendant would have supplied a typical user of cocaine for six to seven months, the marijuana would have supplied a typical user for two years and the hydrocodone pills would have supplied a typical user for around seven and one-half months. The defendant objected to the testimony on the basis that it was "expert" testimony which, pursuant to the order on scheduling and discovery, should have been disclosed to the defendant well in advance of trial. It is undisputed that no disclosure of Castle's testimony was made prior to trial.

The Sixth Circuit has regularly allowed qualified law enforcement personnel to testify on characteristics of criminal activity, such as the drug trade. *United States*

*v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004); *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996); *United States v. Straughter*, 950 F.2d 1223, 1233 (6th Cir. 1991). "Police officers are routinely allowed to testify that circumstances are consistent with distribution of drugs rather than personal use." *Swafford*, 385 F.3d at 1030.

The admissibility of such testimony typically depends on whether it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Applying these principles in *United States v. Anderson*, 89 F.3d 1306, 1312-13 (6th Cir. 1996), *cert. denied*, 519 U.S. 1100 (1997), the court upheld expert testimony by a DEA agent, although he had not been qualified as an expert witness. Making its own independent analysis, the court determined that with the agent's extensive law enforcement experience he "would in all probability have been qualified as an expert if the defendant had raised any challenge to [his] conclusion that the evidence in defendant's apartment was consistent with drug trafficking." *Anderson*, 89 F.3d at 1312-13. It appears clear in this case as well that Castle would have been permitted to testify as an expert witness if the defendant had raised any challenge to his conclusions prior to trial.

The primary question, then, is whether or not the government's failure to disclose the testimony prior to trial justified its suppression. As noted above, it is not

14

disputed that the government made no pretrial disclosure and it is likewise without dispute that expert witnesses and the substance of their opinions were required to be disclosed by the Court's order on scheduling and discovery. That does not automatically mean, however, as the defendant seems to argue, that a violation of the Court's order on scheduling and discovery automatically results in suppression of the evidence.

The Sixth Circuit has identified several factors which should be considered in deciding whether suppression of evidence is an appropriate remedy to be imposed for a discovery violation. These include: (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess. *United States v. Maples*, 60 F.3d 244 (6th Cir. 1995) (citing *United States v. Wolak*, 923 F.2d 1193, 1196-97 (6th Cir.), *cert. denied*, 501 U.S. 1217 (1991)). "Rule 16 does not require federal courts to exclude evidence not turned over to the discovering party in violation of a discovery order." *United States v. Bartle*, 835 F.2d 646 (6th Cir. 1987), *cert. denied*, 485 U.S. 969 (1988). Noting that many courts have adopted the position of favoring imposition of the least severe remedy available to cure prejudice, the Sixth Circuit has stated that "[s]uppression of evidence

must be viewed as an undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court." *Maples*, 60 F.3d at 247. "District courts should embrace the 'least severe sanction necessary' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." *Id*. at 247-48.

Here, the defendant has not argued that the government's failure to disclose Castle's testimony was intentional or in bad faith and, very importantly, has identified no prejudice as a result of the failure to disclose. In fact, counsel for defendant was pressed by the Court at the time of the defendant's objection to identify any prejudice to the defendant as a result of the lack of disclosure. None was established. Not only that, in order to cure any prejudice that *might* have been suffered by the defendant, this Court offered to grant a continuance upon the motion of the defendant to allow the defendant sufficient time to meet and respond to Castle's testimony or to prepare for proper cross-examination. The defendant declined to seek a continuance and stood on his motion that the evidence be suppressed. Under these circumstances, there was no error in the Court's refusal to exclude the testimony of Castle.

### D.    The Government's Closing Argument

During the government's closing argument in this case, a comment was made by the Assistant United States Attorney trying the case which was objected to by the

defendant as an improper comment on the defendant's failure to testify at trial. Although the Court did not interpret the comment made by the government's attorney as such, the Court nevertheless instructed the jury, before allowing argument to proceed, that the defendant had an absolute right not to testify or to present any evidence and that the defendant was not required to prove his innocence in the case. The defendant subsequently moved for a mistrial on the same grounds and the Court denied that motion. Also, during closing argument, the government's attorney made reference to matters which had been raised first by the defendant during his attorney's opening statement to the jury, but as to which, during trial, this Court had sustained the government's objection. The testimony concerned events subsequent to the defendant's arrest and were held to be irrelevant. When these matters were referred to by the government during closing argument, the Court immediately sustained the defendant's objection and no further mention of these matters was made during closing argument.

Prosecutors should put forth only "proper arguments based on the evidence in the record." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (quoting *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.), *cert. denied*, 506 U.S. 865 (2005)). "Also, they must obey the cardinal rule that a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors." *Id*. (internal quotation marks

17

omitted). An important corollary to the Fifth Amendment privilege against self incrimination is that neither a prosecutor nor a trial judge may comment upon a criminal defendant's failure to testify. *Griffin v. California*, 380 U.S. 609 (1965). The rule set forth in *Griffin* applies to indirect as well as direct comments on the failure to testify. *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983).

A jury verdict will not be overturned on the basis of prosecutorial misconduct unless the misconduct is "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial, . . . or so gross as probably to prejudice the defendant." *United States v. Tocco*, 200 F.3d 401, 421 (6th Cir. 2000). Claims of prosecutorial misconduct are reviewed to determine whether the prosecutor's statements were both improper and flagrant. *Broom*, 441 F.3d at 412. Four factors have been identified for consideration when determining flagrancy: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Id*. (citing *Bates*, 402 F.3d at 641). "To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury." *Tocco*, 200 F.3d

at 420-21.

Here, to the extent that the government's attorney's statement to the jury can be construed as a comment on defendant's failure to testify, it was an isolated statement not intentionally made and not likely to have prejudiced the jury against the defendant. Any prejudice to the defendant was cured by the Court's immediate instruction to the jury to disregard the argument and the Court's reminder that the defendant was not required to testify or to prove his innocence in any way. The statement, even if it could be considered prosecutorial misconduct, was not so pronounced as to permeate the atmosphere of the trial or so gross as to prejudice the defendant. In addition, the government's proof against the defendant was strong and could reasonably be characterized as overwhelming. In sum, there is nothing in this record to suggest that the statement made by the government attorney, even if an improper comment on the defendant's failure to testify or offer proof, in any was affected the fairness of the trial or prejudiced the defendant.

With respect to the defendant's other argument, defendant's counsel, in opening statement, represented to the jury that Scott Castle, working in an undercover role, had approached the defendant seeking large quantities of marijuana, pills and cocaine. Counsel also represented that Scott Castle had, on Friday before the search on April 18, 2006, asked the defendant for a machinegun to kill coyotes. According to counsel

in his opening statement, the defendant said "absolutely not" in response to Castle but that the defendant "steered" Castle to a Mexican drug dealer named Jesus. According to counsel, Jesus and another Mexican came knocking on the defendant's door prior to the search with the machinegun which later ended up in the defendant's attic. The proof at trial, of course, did not support any of these statements.

The defendant, however, attempted to offer evidence at trial that, subsequent to defendant's arrest, the defendant had agreed to assist law enforcement officers "to try to set up Jesus" but that, unbeknownst to the defendant, agents had intercepted Jesus' vehicle on highway 11-W and that Jesus was killed trying to get away. Defense counsel characterized the episode as a "big blunder" by the Hawkins County Sheriff's Department. The Court sustained the government's objection to the evidence on the basis that such an agreement, subsequent to the defendant's arrest, was irrelevant. During closing argument, the government made reference to defendant's opening statement and defendant objected. The Court immediately sustained the objection and no further reference was made by the government's attorney to the events outlined in defendant's opening statement.

The defendant now suggests that the Court should have granted a mistrial because of the isolated reference to evidence which was excluded from the trial based upon the Court's ruling. Defendant's argument misses the mark for several reasons.

First of all, it was because of the defendant's counsel's opening statement that reference was ever made to this evidence in the first place. And, despite the Court having sustained the government's objection to the proffered evidence during trial, defendant's counsel made several attempts to elicit testimony about the defendant's supposed subsequent agreement with law enforcement to attempt to assist them in apprehending Jesus. The isolated reference by the government's attorney, therefore, during his closing argument was a reasonable effort by the government to respond to matters raised by the defendant himself, through counsel, and cannot be considered to be a flagrant example of prosecutorial misconduct. In any event, the Court immediately sustained the objection of the defendant and no further reference was made to the evidence by the government's attorney. Neither at the end of the trial, nor in his motion, has the defendant suggested any possible prejudice to him by the comment of the government's attorney during closing argument. This issue lacks merit as well.

### D.    Failure of the Court to Give A Firearm Unanimity Instruction as to Counts Five and Seven

Count 5 of the indictment in this case charged the defendant with possessing a firearm in furtherance of a drug trafficking offense, that is, the offenses charged in Counts 1, 2 and 3 of the indictment. Count 5 listed fifteen different firearms, all of

which were found in or around the defendant's premises searched on April 18, 2006.

Count 7 of the indictment charged the defendant with being an unlawful user of a

controlled substance and in possession of a firearm. Count 7 listed the same fifteen

weapons listed in Count 5 of the indictment. During the Court's charge conference

with the parties after the conclusion of the proof in the case, the Court announced its

intention to instruct the jury that it need find only one of the firearms listed in those

counts had been possessed as charged in the indictment in order to convict the

defendant and that the Court would not instruct the jury that it must unanimously

agree upon which firearm was illegally possessed. The defendant objected to the

Court's proposed instruction and requested that the jury be instructed that it must

unanimously agree upon which firearm the defendant illegally possessed.

The Sixth Circuit has addressed previously the issue of a specific unanimity

instruction in the context of a single count of an indictment which charges alternative

bases for a conviction. In *United States v. Duncan*, 850 F.2d 1104, 1110 (6th Cir.

1998), the court held that a district court should give such a unanimity instruction

when the indictment charges that a defendant committed an offense by "multiple

alternative conceptually distinct acts." The *Duncan* court held that a jury instruction

addressing specific or augmented unanimity is necessary if "1) a count is extremely

complex, 2) there is a variance between the indictment and the proof at trial, or 3)

22

there is a tangible risk of jury confusion." *United States v. Thomas*, 74 F.3d 701, 712 (6th Cir. 1996). In *Thomas*, the court clarified *Duncan* by stating that a single count that presents more than one potential basis for conviction does not automatically require a unanimity instruction. Rather, the requirement to give such an instruction "arises when it shown that there is a 'genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts.'" *Id.* (quoting *United States v. Sims*, 975 F.2d 1225, 1241 (6th Cir. 1992)).

The court, then, applies a fact-specific rule and the need for the instruction depends upon the facts of the particular case. "Therefore, there must be specific evidence to demonstrate the need for a specific unanimity instruction before a trial judge will be required to provide such an instruction." *United States v. Krimsky*, 230 F.3d 855, 860 (6th Cir. 2000). With respect to firearms offenses, the "rule is that no unanimity instruction is required where multiple firearms charged in a single count were discovered as part of the same transaction." *United States v. DeJohn*, 368 F.3d 533, 540 (6th Cir. 2004).

In the present case, Counts 5 and 7 were not so complex that there existed a chance of jury confusion or of differing outcomes with regard to the firearms located in and around the defendant's residence. The proof at trial established that each of the

firearms listed in these specific counts of the indictment were all seized in and around the residence of the defendant and were discovered "as part of the same transaction." This is particularly true where the particular firearms described in the indictment are not elements of the offenses charged but rather are the means used to satisfy the element of "a firearm" having been possessed. *DeJohn*, 368 F.3d at 542. The defendant has pointed to nothing about the particular facts of this case which created any risk of jury confusion or that a conviction may have occurred as the result of different jurors' concluding that the defendant committed different acts. This issue, likewise, lacks merit.

## V.    Conclusion

For all the foregoing reasons, the defendant's motion for judgment of acquittal or, in the alternative, for a new trial is not well taken and is **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE